Jack M. BASS, Jr., et al., Appellants,

v.

H. Clay FOUTS and Clyde Nichols, d/b/a International Pipe & Supply Company, Appellee.

No. 7680.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 18, 1966.

Rehearing Denied Feb. 15, 1966.

William Key Wilde, Bracewell, Reynolds & Patterson, David J. Nagle, Houston, for appellants.

Gerald H. Fortney, Houston, Ervin Flowers, Flowers & McManus, Channelview, for appellee.

FANNING, Justice.

This suit, brought by plaintiff-appellee, originated as an action to recover the unpaid balances of two promissory notes, attorney's fees thereon, interest, etc.

Prior to the trial on the merits, this case was consolidated for trial purposes with two others and, by stipulation, the United States Sulphur Corporation, a co-defendant, was dismissed. Early in the trial on the merits, parol evidence tending to prove that defendants-appellants herein were co-guarantors of the payment of the promissory notes in suit and obligated to pay same, though not signatories, was excluded as violative of Articles 3995, Subdivision 2, (Statute of Frauds), and 5932, section 18, (Negotiable Instruments Act) Vernon's Annotated Texas Civil Statutes.

To avoid the consequences of the trial court's ruling, the appellee by trial amendment deleted all references to the two promissory notes from his trial petition. As amended appellee's petition sought recovery upon an account for pipe, etc., allegedly supplied by appellee to appellants and United States Sulphur Corporation, upon the theory that appellants and United States Sulphur Corporation were joint venturers in the operation of a sulphur mine and that such pipe, etc. were furnished to said joint venture and that all of said joint·venturers were jointly and severally liable for the account. It was well proven in the record that United States Sulphur Corporation was insolvent and this was undoubtedly the reason why said corporation was dismissed as a party to the lawsuit by stipulation.

The trial court submitted special issues to a jury. In response to issue 1 the jury found to the effect that appellants and United States Sulphur Corporation were engaged in a joint venture in the operation of the sulphur mine at High Island, Texas. In response to issue 3, the jury found to the effect that appellee furnishd the materials and services described in plaintiff's petition at the special instance and request of "this joint venture." (referring back to

special issue 1). The trial court rendered judgment against appellants in the sum of $26,685.26, with interest, costs, etc. Appellants have appealed.

It is clear that the judgment of the trial court can not be sustained on the original theory—upon which the suit was brought, as appellants were not signatories to the two notes originally sued upon, and they could not be held liable on any alleged oral guarantees of the notes in question. See Article 5932, section 18 (Negotiable Instruments Act) and 3995, subdivision 2 (Statutes of Frauds), Vernon's Annotated Texas Civil Statutes.

Appellants, among other contentions, by points 10, 11 and 12, contend that there was no evidence of probative force to support the jury's findings to special issues 1 and 3, that the evidence was insufficient to support said findings and that the jury's answers to special issues 1 and 3 are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

For a comprehensive discussion of the law applicable to the determination of "no evidence" and "insufficient evidence" points, see Chief Justice Calvert's article " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex. Law Rev., No. 4, p. 361.

There was no evidence that there was any written joint venture agreement between appellants and United States Sulphur Corporation to operate the sulphur mine at High Island, Texas, and no character of a written agreement to such effect was offered in evidence. We have also carefully examined the massive and voluminous record and are unable to find any admissible relevant evidence of probative force to show that any direct oral agreement was had between said parties to operate as joint venturers the sulphur mine at High Island, Texas. It is our further view that the circumstantial evidence is too weak and too remote to constitute evidence of probative force; much of such circumstantial evidence was either inadmissible or was of such remote and highly speculative relevancy as not to constitute evidence of probative force to support the jury's finding that appellants and the Sulphur Corporation were engaged in a joint venture in the operation of the sulphur mine at High Island, Texas. We think the probative force of appellee's evidence to support the answers of the jury to special issues 1 and 3, is so slight that it at best raises only "a mere surmise or suspicion of the fact(s) sought to be established", and is in legal contemplation no evidence at all, and it was the duty of the trial court to direct a verdict for appellants. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898). Appellants' 10th point is sustained.

The evidence is insufficient to sustain the jury's answers to special issues 1 and 3. Appellants' 11th point is sustained.

Also after carefully considering and reviewing the entire record in this cause in the light of the rules announced in Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), we further hold that the jury's findings to special issues 1 and 3 are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Unquestionably, the great weight and preponderance of the evidence is to the effect that appellants were merely stockholders who also owned royalty interests in the United States Sulphur Corporation. They vigorously denied ever having agreed in writing or orally to become joint venturers with said corporation to operate the sulphur mine in question. It is true that appellants at various times gave financial aid to the failing corporation in which they had a financial interest as stockholders and royalty owners. They endorsed various notes at different times for the corporation and had to pay them. It is also apparent that they also refused to sign other notes of the corporation. The two notes originally sued on in this cause were not

signed by appellants and they can not be held liable on such notes nor can they be held liable thereon by any alleged oral guarantee, for the reasons hereinbefore stated. The fact that appellants gave financial assistance to the failing corporation on other transactions and signed or endorsed various other notes for the corporation is no evidence of probative force that they intended or agreed to be joint venturers with what was a failing or insolvent corporation. The reasonable conclusion is, of course, that they as stockholders and royalty owners were trying to protect the financial interests they owned as stockholders and royalty owners. It would certainly be an unreasonable conclusion that appellants desired to become joint venturers with an obviously insolvent corporation and it is unreasonable to conclude that they intended to make the general financial obligations of an insolvent corporation, as their own. It is also reasonable to further conclude that wherever appellants signed or endorsed the corporation's notes that they intended to do what they did, but further it is also reasonable to conclude that when they refused to sign, or did not choose to sign or endorse the corporation's notes that they did not intend to become liable on the notes they did not sign and that they also did not intend to become liable on the debt of the corporation evidenced by the two notes originally sued upon in this cause. As we view this case, appellee seeks to fasten the obligations of the insolvent Sulphur Corporation on appellant stockholders and royalty owners, who did not sign or endorse the two notes in question and who never agreed in writing, orally or by any reasonable implication to become joint venturers with the insolvent sulphur corporation in the operation of the sulphur mine in question. Appellants' 12th point is sustained.

The sustaining of appellants' "no evidence" point (point 10) calls for a reversal and rendition of the judgment of the trial court. If we were mistaken in sustaining point 10, then our sustaining of points 11 and 12 would call for a reversal and remand of the cause, and if we were not correct in reversing and rendering we would reverse and remand. However, we are of the view that the appropriate disposition is reversal and rendition rather than reversal and remand.

The judgment of the trial court is reversed and judgment is rendered that appellee take nothing from appellants.

Reversed and rendered.